UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RED WOLF ENERGY TRADING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. JYLKKA,<br>BIA CAPITAL MANAGEMENT, LLC,<br>GREGORY V. MOELLER,<br>GROWTHWORKS, LLC,<br>MICHAEL HARRADON, JON MOELLER,<br>ERIC BROWN, and BRIAN VOORHEIS,<br><br>Defendants. | CIVIL ACTION NO._____ |

**COMPLAINT**

Plaintiff Red Wolf Energy Trading, LLC ("Red Wolf"), states as its Complaint against Defendants Christopher Jylkka ("Jylkka"), BIA Capital Management, LLC ("BIA"), Gregory V. Moeller, GrowthWorks, LLC ("GrowthWorks"), Michael Harradon, Jon Moeller, Eric Brown, and Brian Voorheis (collectively, "Defendants"), the following:

This lawsuit results from Defendants' scheme to create and develop a competing business by unlawfully using and taking the software, trade secrets, and other assets of Red Wolf. These activities have put Red Wolf's business at risk.

**PARTIES**

1. Plaintiff Red Wolf is a North Carolina limited liability company. With its subsidiaries, Red Wolf is an energy trading firm based in Raleigh, North Carolina that transacts

virtual electricity products in Regional Transmission Operator ("RTO") and Independent System Operator ("ISO") markets regulated by the Federal Energy Regulatory Commission ("FERC").

2. Defendant Jylkka resides in Weston, Massachusetts. Defendant Jylkka worked for Red Wolf as an Energy Trader from October 2015 until January 2019.

3. Defendant BIA is a Massachusetts limited liability company created on or around October 22, 2018. Upon information and belief, the principal office of Defendant BIA is located at 12 Pond Brook Circle, Weston, MA 02943.

4. Defendant BIA's Operating Agreement was executed on November 30, 2018. The operating agreement of BIA is attached to this Complaint as **Exhibit A**.

5. The Members of Defendant BIA are Defendants Gregory V. Moeller, Christopher Jylkka, Michael Harradon, Jon Moeller, Eric Brown, and Brian Voorheis.

6. Defendant GrowthWorks is a Massachusetts limited liability company created in 2005.

7. Defendant Gregory V. Moeller is Managing Director of Defendant GrowthWorks residing in Weston, Massachusetts. Defendant Moeller's residence is the same address as Defendant BIA.

8. Defendant Michael Harradon is a natural person and a member of Defendant BIA.

9. Defendant Jon Moeller is a natural person and a member of Defendant BIA.

10. Defendant Eric Brown is a natural person and a member of Defendant BIA.

11. Defendant Brian Voorheis is a natural person and a member of Defendant BIA.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. A question of federal law exists because Plaintiff asserts a claim under the Defend Trade Secrets Act of 2016, 28 U.S.C. § 1836, *et seq.*

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because these claims are so closely related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

14. This Court has personal jurisdiction over Defendants, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions that gave rise to Plaintiff's claims occurred in Massachusetts.

## OPERATIVE FACTS

### Red Wolf's Business

15. Red Wolf was formed by its Chief Executive Officer, Wesley Allen, in 2008.

16. Red Wolf is an energy trading firm. The company seeks to predict energy needs in the day-ahead, or forward market, that align with energy needs that occur in the real-time market. Red Wolf uses algorithms as template transactions at specific locations that can be modified based on daily external factors, such as weather. The algorithms are developed in Red Wolf's proprietary software system that tracks historical data and then imported into its software that submits bids and offers to the ISOs/RTOs. The algorithms are fully automated and programmed to optimize trading decisions based on forecasted conditions. After daily forecast data is uploaded, the algorithm will automatically execute transactions with no further action required from the trader.

17. Red Wolf hires experienced energy traders and permits each trader to work from home, with employees located throughout the country. Red Wolf specifically recruits seasoned experts with significant experience in FERC-regulated markets.

18. Red Wolf traders typically transact energy trades in a single ISO/RTO market and within a single Red Wolf subsidiary. The company's capital is separated by market, and traders are given access to that capital to place transactions.

19. Red Wolf trades "incremental offers" and "decremental bids" in the markets operated by PJM Interconnection, L.L.C., New York Independent System Operator Corp. ("NYISO"), Mid-Continent Independent Transmission System Operator ("MISO") and the Electric Reliability Council of Texas ("ERCOT"), as well as convergence bidding in the markets operated by the California Independent System Operator ("CAISO").

20. Like other energy trading companies, Red Wolf's trading positions are anonymous in CAISO. Though CAISO publishes transaction data on a 60-day rolling basis, company names are omitted, and trades are identified only through unique numerical identifiers.

21. Energy traders commonly develop proprietary algorithms for entering incremental offers and decremental bid transactions in ISO/RTO markets.

22. At significant time, effort, and expense, Red Wolf has developed proprietary software programs. These programs run proprietary algorithms that drive the company's trading activities. No competitor has access to Red Wolf's software or trading algorithms.

23. Red Wolf's CEO Wesley Allen has performed demonstrations of the company's proprietary software to market regulators and industry experts and the software is widely considered some of the best in the industry.

24. Red Wolf's software is a full-service platform that includes a risk management function in addition to data warehousing, invoicing, ISO/RTO settlement breakdown and distribution, credit tracking, real time trade settlement, back office, front office and compliance functions.

25. Red Wolf takes great efforts to protect the confidentiality of its proprietary software programs and trading algorithms.

26. Red Wolf's employment contracts prohibit distribution or unauthorized use of its software or trading algorithms.

27. No energy trader employed by Red Wolf has direct access to the Red Wolf database or source code. Traders may only run the software and recreate it entirely, with no ability to make changes to the underlying programs. Only IT Staff has the authority to modify the programs.

28. Red Wolf employs two-factor authentication for access to its proprietary software and trading algorithms.

29. Each trader employed by Red Wolf is authorized to utilize Red Wolf's confidential and proprietary software programs. This access allows traders not only to place trades into the various ISO/RTO (independent system operator / regional transmission organization) markets, but also to strategize and analyze the viability of future trading strategies through a mock, or paper trading, function.

30. Red Wolf's software is designed so that it does not permit traders to view another trader's transactions.

31. One proprietary Red Wolf software program allows traders to track trades that will be settled with the ISO/RTO markets. This software allows traders to mock, or paper trade,

within the program so that future profitability of a trade model or algorithm can be tested without actually entering the trade into the market.

32. A second proprietary Red Wolf software program can "back-test" transactions for profitability. This software tracks trades historically over a period of time and can apply various data filters.

33. A third proprietary Red Wolf software program displays constraint data in each ISO/RTO market in which Red Wolf operates.

34. These proprietary Red Wolf software products can respond to individual queries to gather and analyze data tailored to a trader's specific request.

35. Red Wolf's IT staff use these and other confidential and proprietary software products to analyze energy markets using public data released by the ISOs/RTOs.

36. Utilizing these confidential Red Wolf products, Red Wolf's IT staff employs algorithms to measure certain data points, such as congestion or constraint data, to assist traders with determining future profitability at a specific location.

37. These confidential software products and algorithms are an essential and integral part of Red Wolf's business. Their proprietary and confidential nature give them significant value to Red Wolf.

**Defendant Jylkka's Employment at Red Wolf**

38. Defendant Jylkka was hired by Red Wolf as an Energy Trader on October 20, 2015. Consistent with Red Wolf's business model, Defendant Jylkka conducted business for Red Wolf from his home in Weston, Massachusetts.

39. As an Energy Trader for Red Wolf, Defendant Jylkka enjoyed significant independence in his day-to-day business activities for Red Wolf, including in developing trading strategies and placing trades for Red Wolf.

40. Upon his hiring, Defendant Jylkka negotiated and entered into an employment agreement (the "Employment Agreement") with Red Wolf.

41. Defendant Jylkka negotiated over the terms of the Employment Agreement, including provisions addressing potential outside consulting work by Defendant Jylkka. The Employment Agreement was supported by consideration—namely, Defendant Jylkka worked as an employee for Red Wolf, which compensated Defendant Jylkka accordingly.

42. In the Employment Agreement between Defendant Jylkka and Red Wolf, Defendant Jylkka acknowledged that as an Energy Trader, he had access to Red Wolf's trade secrets and confidential and proprietary business information.

43. In his Employment Agreement, Defendant Jylkka agreed not to disclose or utilize Red Wolf's confidential information except in connection with Red Wolf activities and to return or destroy all confidential information upon the conclusion of his employment.

44. In his Employment Agreement, Defendant Jylkka agreed to maintain an orderly transition of his projects and duties upon his departure from Red Wolf and to continue working for least 20 full actual working days from the time he provided notice of his departure.

45. In his Employment Agreement, Defendant Jylkka agreed not to participate in, consult with, or otherwise act on behalf of any other business, enterprise, or venture that is in any business that is in competition with Red Wolf.

**Defendant Jylkka's Wrongful Actions**

46. Defendant Jylkka had access to, and utilized, Red Wolf's proprietary software tools.

47. Without notifying his superiors at Red Wolf, beginning on or around June 2017, Defendant Jylkka began uploading mock trades from an external source using one of Red Wolf's proprietary software programs. Upon information and belief, Defendant Jylkka conducted this activity in order to aid him and others in developing a new energy trading algorithm.

48. Many of the trades by Defendant Jylkka were flagged by Red Wolf staff because the trades were placed in fractional megawatt ("MW") quantities. It is unusual for traders at Red Wolf, or elsewhere in the industry, to place trades in fractional MW quantities.

49. Defendant Jylkka placed similar mock trades on Red Wolf's system from summer 2017 until December 2018.

50. Defendant Jylkka also utilized Red Wolf staff to track certain "uplift" fees charged by CAISO, not visible to non-market participants, that are not of concern to individual traders but are to companies that trade in CAISO.

51. By no later than mid-December, 2018, unbeknownst to Red Wolf and without authorization, Defendant Jylkka began placing **actual trades** using external trading strategies into the CAISO market. Upon information and belief, these actual trades were placed on behalf of Defendants, rather than Red Wolf.

52. The vast majority of these actual trades placed using external trading strategies were "short" positions, meaning there was no cap on Red Wolf's risk exposure. These trades placed Red Wolf's capital at significant risk.

53. In total, Defendant Jylkka placed 3,598 mock trades and 1,693 actual trades on behalf of Defendants rather than Red Wolf.

54. After Defendant Jylkka placed these actual trades, they came to the attention of Red Wolf's IT manager because some were placed in fractional MW quantities. Red Wolf's IT manager alerted Red Wolf's CEO.

55. After investigation, Red Wolf discovered that the mock trades entered into its proprietary software system were imported from software files whose source was outside of Red Wolf's computer systems.

56. Analysis of Jylkka's trading activities by Red Wolf IT staff indicates that Jylkka tested at least five model algorithms using Red Wolf's proprietary software and algorithms. Upon information and belief, the goal of the tests was to determine the profitability of the trading strategies embodied by the algorithms.

57. Using rare, fractional quantity transactions also allows a trader to easily identify a company's unique identifier by reviewing CAISO's public release of trade data 60 days after the trading day in question.

58. By no later than November 30, 2018, Mr. Jylkka became a Member of BIA, which is a Limited Liability Company.

59. A Member of a Limited Liability Company is akin to being a co-owner of the company.

60. On December 28, 2018, Defendant BIA successfully obtained ISO certification and was formally announced by CAISO as a new market participant.

61. On January 8, 2019, Defendant Jylkka orally tendered his resignation from Red Wolf effective immediately, and provided notice of resignation in writing the following day.

62. On January 9, 2019, during a phone call with Red Wolf management, Defendant Jylkka misrepresented that he had been in discussions to join another company.

63. Defendant Jylkka failed to tell Red Wolf that he had already joined another, competing, enterprise.

64. In January 2019, Jylkka also informed Red Wolf management that Defendant GrowthWorks had been providing Defendant Jylkka with the external trading recommendations that Defendant Jylkka had imported to and executed through Red Wolf.

65. Upon information and belief, Defendant GrowthWorks operates to apply machine learning to energy trading to assist and enhance remaining Defendants' energy trading activities.

## CAUSES OF ACTION

### COUNT I: MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, et seq.
### (AGAINST ALL DEFENDANTS)

66. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

67. Red Wolf holds trade secrets, including trading algorithms.

68. Red Wolf took reasonable steps to keep its proprietary trading algorithms confidential.

69. Red Wolf derives substantial independent economic value from the proprietary nature of its trading algorithms, which give it a competitive edge in the markets in which Red Wolf operates.

70. Red Wolf's proprietary trading algorithms are utilized in interstate commerce, namely regional energy trading markets across the country.

71. Defendant Jylkka acquired these trade secrets through his employment at Red Wolf and improperly disclosed these trade secrets to remaining Defendants.

72. Defendants are now improperly utilizing Red Wolf's trade secrets at various companies including, but not necessarily limited to, BIA and GrowthWorks.

73. Defendants BIA, GrowthWorks, Gregory V. Moeller, Christopher Jylkka, Michael Harradon, Jon Moeller, Eric Brown, and Brian Voorheis are improperly utilizing Red Wolf's trade secrets and knew or had reason to know that the trade secrets were acquired by Defendant Jylkka under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

74. Red Wolf has suffered damage, and will continue to suffer damage, as a result of the misappropriation and use of its trade secrets.

### COUNT II: TORTIOUS MISAPPROPRIATION OF TRADE SECRETS UNDER MASS. GEN. L. Ch. 93 § 42 et seq. (2017) (AGAINST DEFENDANT JYLKKA)[1]

75. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

76. As described above, Red Wolf's proprietary trading algorithms constitute trade secrets.

77. As described above, Red Wolf took reasonable steps to preserve the secrecy of its algorithms and related information.

---

[1] Mass. Gen. L. Ch. 93 § 42 was amended effective October 1, 2018 to reflect the enactment of the Massachusetts Uniform Trade Secrets Act. However, because the Massachusetts Uniform Trade Secrets Act does not apply to any violations that began prior to October 1, 2018 and continued past that date, Red Wolf brings its Massachusetts state law trade secrets claim under the predecessor law, Mass. Gen. L. Ch. 93 § 42 (2017).

78. Defendant Jylkka used improper means, in breach of a confidential relationship he had with Red Wolf, to acquire and use Red Wolf's trade secrets. Namely, Jylkka used his employment with Red Wolf to acquire Red Wolf's trade secrets for use by Defendants.

79. Red Wolf has suffered damage and will continue to suffer damage from the misappropriation of its trade secrets.

### COUNT III: BREACH OF CONTRACT
### (AGAINST DEFENDANT JYLKKA)

80. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

81. In 2015, Defendant Jylkka and Red Wolf entered into the Employment Agreement, a binding and enforceable contract.

82. Defendant Jylkka has breached the Red Wolf Employment Agreement:

   a. While employed at Red Wolf, Defendant Jylkka acted on behalf of competing businesses, including but not necessarily limited to BIA and GrowthWorks.

   b. Defendant Jylkka disclosed and utilized Red Wolf's confidential information and trade secrets while he was employed and Red Wolf and continuing to present.

   c. Defendant Jylkka departed Red Wolf without appropriate notice under the Red Wolf Agreement.

83. As a result of Defendant Jylkka's breach of the Red Wolf Employment Agreement, Red Wolf has suffered damage.

### COUNT IV: CONVERSION
### (AGAINST ALL DEFENDANTS)

84. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

85. Defendants intentionally and wrongfully exercise dominion over Red Wolf's property, namely its proprietary trading software and algorithms, which Defendants continue to use.

86. Red Wolf has suffered, and continue to suffer damage from Defendants' wrongful dominion over Red Wolf's property.

### COUNT V: BREACH OF DUTY OF LOYALTY
### (AGAINST DEFENDANT JYLKKA)

87. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

88. As an energy trader, Defendant Jylkka occupied a position of trust and confidence at Red Wolf.

89. Defendant Jylkka owed Red Wolf a duty of loyalty.

90. Defendant Jylkka had an obligation to protect Red Wolf's interests.

91. His duty of loyalty prohibited Defendant Jylkka from competing with Red Wolf during his employment, among other obligations.

92. Jylkka violated his duty of loyalty by, among other things, utilizing Red Wolf resources, trade secrets, and confidential information to develop and enrich competing businesses.

93. As a result of Defendant Jylkka's violation, Red Wolf has suffered, and will continue to suffer damage, including but not limited to loss of resources, disclosure of trade secrets, and confidential information being utilized by competing businesses.

### COUNT VI: UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

94. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

95. Red Wolf conferred a benefit on Defendants in that its resources were utilized to develop trading strategies for Defendants.

96. Defendants had knowledge of and appreciated the benefit conferred on them by Red Wolf.

97. Defendants conspired and orchestrated the taking of Red Wolf's resources for their benefit.

98. Red Wolf conferred the benefit on Defendants under circumstances that would have made it reasonable for Red Wolf to expect compensation.

99. Given that Defendants conspired and orchestrated the utilization and theft of Red Wolf's resources for their own benefit, it is inequitable under the circumstances for Defendants to retain these benefits.

### COUNT VII: UNFAIR AND DECEPTIVE TRADE PRACTICES
### UNDER MASS. CH. 93A
### (AGAINST ALL DEFENDANTS)

100. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

101. Both Plaintiff and Defendants engage in trade and commerce, namely energy trading.

102. Defendants' unfair and deceptive acts and practices occurred primarily and substantially in Massachusetts.

103. Defendant Jylkka engaged in unfair and deceptive acts and practices by misappropriating Red Wolf's trade secrets.

104. All Defendants engaged in unfair and deceptive acts and practices by utilizing Red Wolf resources, trade secrets, and confidential information to develop and enrich their competing businesses.

105. Defendants' conduct falls within the penumbra of common-law, statutory, and other established concepts of unfairness.

106. Defendants' conduct is immoral, unethical, and unscrupulous.

107. Defendants' conduct has caused, and continues to cause, substantial injury to Red Wolf.

108. As a result of Defendants' unfair and deceptive trade practices, Red Wolf has suffered, and will continue to suffer damage, including but not limited to loss of resources, disclosure of trade secrets, and confidential information being utilized by competing businesses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Red Wolf Energy Trading, LLC respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. Orders temporarily, preliminarily, and permanently enjoining Defendants from utilizing Red Wolf's trade secrets and confidential information;

B. An order requiring Defendants to return to Red Wolf all of Red Wolf's trade secrets and confidential information in Defendants' possession or control;

C. Entry of an award for compensatory damages for the foregoing acts of trade secret misappropriation, breach of contract, conversion, breach of duty of loyalty, and unfair and deceptive trade practices;

D. An order requiring Defendants pay restitution to Red Wolf for the unjust enrichment enjoyed by Defendants;

E. An order of multiple damages as allowed by Mass. Gen. Laws Ch. 93A, and fees and costs as provided under state law;

F. An order requiring Defendants to pay Red Wolf punitive damages in an amount as yet undetermined for Defendants' foregoing acts;

G. Other relief as the Court may deem appropriate.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Red Wolf respectfully requests a trial by jury on all issues so triable.

Dated: January 17, 2019

*/s/ John A. Sten*
John A. Sten (BBO #629577)
Maeve C. Tibbetts (BBO #687545)
Pierce Atwood LLP
100 Summer Street
Boston, MA  02110
Telephone: (617) 488-8155
Email: jsten@pierceatwood.com