UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RED WOLF ENERGY TRADING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. JYLKKA, BIA CAPITAL MANAGEMENT, LLC, GREGORY V. MOELLER, GROWTHWORKS, LLC, MICHAEL HARRADON, JON MOELLER, ERIC BROWN, and BRIAN VOORHEIS,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-10119 |

**PLAINTIFF RED WOLF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL DOCUMENTS**

Plaintiff Red Wolf Energy Trading, LLC ("Plaintiff" or "Red Wolf"), pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1, moves to compel Christopher E. Jylkka ("Jylkka") and Bia Capital Management, LLC ("Bia"), Gregory V. Moeller ("Moeller"), and Michael Harradon ("Harradon") (collectively, the "Bia Defendants," and together with Jylkka, the "Defendants") to produce (1) documents through January 31, 2019, for all requests in Red Wolf's First Request for Production of Documents to Jylkka and the Bia Defendants individually; (2) Google Suite documents linked to in Defendants' production; (3) documents previously designated as Attorney's Eyes Only ("AEO") in re-designated form and to also state the basis for the remaining AEO designations (as it appears unwarranted); and (4) all documents supporting the statements made in Harradon's Declaration. Red Wolf also moves for payment of its attorneys' fees and expenses in connection with its motion pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure.

11820547.2

## SUMMARY

It has been over five months since Red Wolf first served document requests on Bia, Moeller, Harradon, and Jylkka.[1]  But even as of today, Defendants have failed to comply with Red Wolf's reasonable discovery requests.  First, they asked for a two-week extension to respond to the document requests (through November 15, 2019).  But, instead of then sending any responsive documents, Defendants instead only served its written responses and objections.  Indeed, it was not until November 22, 2019 that Jylkka first produced an initial set of documents to Red Wolf.  An initial set of documents from Bia, Moeller, and Harradon were not received until even later, November 25, 2019.  Even then the documents produced were incomplete and deficient in a number of ways.  In addition to not being a complete production (by Defendants' own admissions), these productions were:

- overly designated as "Attorney-Eyes Only;"
- in electronic formats that made them impossible to effectively review;
- missing relevant document attachments;
- lacking in specificity as to the source or custodian of the produced document; and
- unreasonably limited in date range—specifically Defendants' arbitrarily designated a production cut-off date of either (depending on the request) January 8, 2019 (the date Jylkka departed Red Wolf) or January 17, 2019 (the date Red Wolf filed its Complaint).

Since that time, Red Wolf has attempted to resolve these issues with Defendants.  Despite repeated promises to resolve these issues and to produce the requested documents, however, Defendants have failed to so do.  Red Wolf is now left with no choice except to bring this matter to the Court for resolution.

---

[1] On August 1, 2019 following a Scheduling Conference, the Court entered a Scheduling Order. (ECF. No. 54). The Scheduling Order provided for discovery only by Plaintiff in the form of "three depositions, of Mr. Jylkka, Mr. Moeller, and Mr. Harradon, and document Requests relating to those depositions."  (ECF No. 54 at ¶ 7).

**BACKGROUND AND DISCUSSION**

I.   **LEGAL STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Where a party fails to produce documents or permit inspection as requested under Rule 34, a party seeking discovery may more for an answer compelling such production. Fed. R. Civ. P. 37(a)(3)(B). Rule 37 and Local Rule 7.1(a)(2) requires that counsel meet and confer on the relevant issues before any party files such a motion, which serves to "foster[] discussion between parties about matters before they come before the court, and it preserves scarce judicial resources." *Martinez v. Hubbard*, 172 F.Supp.3d 378, 385 (D. Mass. 2016).

Further, if the motion is granted or the requested discovery is provided after the motion was filed, "the court must … require the party whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

II.   **PRODUCTION AND RELIEF SOUGHT**

A.   **Documents Through January 31, 2019**

Red Wolf's Request No. 1 seeks communications with co-defendant Jylkka, a former employee of Red Wolf through the present.[2] Both Jylkka and the Bia Defendants, however, limited their production to documents sent or received prior to January 8, 2019, and only to those

---

[2] Red Wolf's First Request for Production of Documents to all Defendants included the instruction that unless otherwise specified, "the time period for the requests shall be January 1, 2015 through the present." (Instruction ¶ 8 of each Request).

communications specifically concerning Bia, Red Wolf, or Growth Works. *See* Exhibit N.

As to all of Red Wolf's other requests for documents, Jylkka limited his responses to documents or correspondence sent or received prior to January 8, 2019. In contrast, the Bia Defendants limited their responses to all other requests to documents sent or received prior to January 17, 2019, which is the date that Red Wolf filed its Complaint. *See id.*

During the parties' meet and confer on February 25, 2020, Red Wolf agreed for Request No. 1 to confine the scope to a more limited universe of topical areas, and to limit its request to documents through January 31, 2019 for *all requests*. *See* Exhibit A. In response, Jylkka agreed—but has not produced—relevant, non-privileged documents through January 31, 2019 for all requests. *Id.*, at p. 4-5. In contrast (again), the Bia Defendants agreed—but have not produced—documents through January 17, 2019. Both parties had agreed to produce these additional documents by March 6, 2020. As of today, no such additional production has been received from any of the defendants. *Id.*

Accordingly, Red Wolf moves to compel production of documents through January 31, 2019 from Defendants.[3] Defendants agreed (in most cases) to produce documents through January 31, 2019, so on its face this motion is justified. Further, it is unreasonable for Defendants to attempt to limit their production to either January 8th or January 17th is unreasonable based on the allegations of this case, and their own admissions in this matter. For example, the Bia Defendants concede that they continued developing their trading business past January 17, 2019, and themselves reference January 30, 2019 as a date relevant to their

---

[3] Relatedly, Red Wolf has made counsel for Jylkka aware of deficiencies in Jylkka's production to date, namely that his production is not "reasonably usable," as it is almost exclusively in the form of PDF documents, and no documents were produced with a load file or other metadata. Although not a matter for this Motion to Compel, Red Wolf has requested that all *supplemental* production by Jylkka be formatted pursuant to reasonably accepted ESI standards since discussed by the parties, which includes a load file and TIFF images.

defense—they should not be able to now claim it is overbroad. *See* Declaration of Michael Harradon, attached as Exhibit B, at ¶ 29.

Further, Jylkka's discovery limitation is unreasonable for the additional reason that he previously admitted to deleting the entire contents of his Red Wolf smartphone. Specifically, Jylkka states that on January 12, 2019, he "reset" his cell phone and wiped all of its data, claiming that at the time he did not believe "that he would be a defendant in any civil action commence by Red Wolf…" *See* Exhibit C. In doing so, Jylkka admits (through his counsel) that he removed both Red Wolf and personal items from that company phone. *Id.* Whether these assertions are true deserves to be explored through discovery, especially because Red Wolf threatened him with litigation on January 8, 2019 when on the phone with him and counsel. The duty to preserve evidence arises when litigation is reasonably anticipated. *Gordon v. DreamWorks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 314 (D. Mass. 2013); *see Asher Assocs. v. Baker Hughes Oilfield Operations*, No. 07–cv–01379, 2009 WL 1328483, at *5 (D.Colo. May 12, 2009) (noting that the duty to preserve evidence may arise even before a lawsuit is filed if a party has notice that future litigation is likely). By January 12, 2019, Jylkka was been keenly aware of the possibility of litigation. Indeed, as early as July 2018, Jylkka and Moeller exchanged emails discussing possible legal exposure for Jylkka based on his employment contract with Red Wolf. *See* Exhibit D. Further, when Jylkka resigned from Red Wolf on January 8, 2019, counsel for Red Wolf was on the call, a fact known to Jylkka.

The discovery sought by Red Wolf in this matter consists almost exclusively of personal documents and correspondence from or between the Defendants as they were developing the Bia trading business—some of which have been irretrievably lost through Jylkka's "reset." Because these items cannot be replaced, restored, or otherwise reviewable by virtue of the other

Defendants' production, Red Wolf has the right to explore and discover the correspondence and emails between Defendants that bear on this important subject, and therefore requests that this Court compel all Defendants to produce documents responsive to *all* requests, unless otherwise limited by Red Wolf, through January 31, 2019.

### B.    Production of Documents from the Google Suite

To date, the Defendants have produced a large number of documents which contain links to other "shared" documents or files from the Google Suite—the cloud-based system including Google Mail email, Google Drive, Google Groups, and Google Hangout Chats.[4] But Defendants have failed to produce any of those linked documents—despite promising to do so on numerous occasions. *See* Exhibit E and Exhibit H.

Red Wolf has been patient and diligent in seeking these attachments. For example, on November 29, 2019, counsel for Red Wolf contacted Defendants' counsel to request a meet and confer regarding deficiencies identified in Defendants' production to date. Counsel for Defendants asked to postpone any such conversation until the following week, as all Defendants still had outstanding production and thought it would be more productive if the meet and confer took place after more documents were produced. Counsel for Red Wolf agreed, and in a subsequent correspondence, counsel for Jylkka requested an overview of Red Wolf's concerns in advance of the call. *See* Exhibit F.

Counsel for Red Wolf responded to this request in a letter dated December 6, 2019. *See* Exhibit G. One of the items listed in the letter was that a number of emails contain links to

---

[4] Use of the cloud-based Google Suite obviates the need to attach static documents to emails and instead keeps a live "shared" document accessible only by select users. If these Google docs or spreadsheets were traditional Word or Excel files, they would have been attached to the emails and produced alongside them in discovery. For this reason, all documents in the Google Suite that were linked to in the documents and correspondence produced should also be produced by the Defendants.

Google docs (or other shared documents or spreadsheets) but that the documents themselves were not attached or otherwise included in the production. This letter, sent to all counsel, made clear that many of the deficiencies identified within apply to productions by all Defendants, even though the letter was in response to counsel for Jylkka.  Despite these additional demands, the deficiencies of Defendants' productions were not cured.

On December 16, 2019, when the outstanding discovery had still not been produced, counsel for Red Wolf again contacted Defendants' counsel about the meet and confer; this email reiterated Red Wolf's request for "shared files" from the Google Suite. *See* Exhibit E. In reply, counsel for the Bia Defendants requested that counsel for Red Wolf identify the exact documents for which "links" were being sought. Counsel for Red Wolf took on the work of performing a preliminary search (at great time and expense to itself) and provided Bates ranges for the documents in both Jylkka and the Bia Defendants' productions that link to a document from the Google Suite.  Red Wolf then requested that Defendants perform their own searches to ensure thorough production—as they are required to do under applicable civil rules of discovery.  Given the dynamic nature of these electronic document links, counsel for Red Wolf stressed that production of those documents should be as they existed at the time of the email referencing it, rather than whatever form they may now exist.  Red Wolf's counsel also included instructions from the Google Support website on how to export the requested Google Suite documents. Counsel for the Bia Defendants confirmed that she would review the issue. *See* Exhibit E.

Three months after Red Wolf's initial document requests and numerous informal requests later, on January 2, 2020, counsel for the Bia Defendants, produced supplemental discovery.  *See* Exhibit H.  This production finally contained some Google Hangout (chats).  But it also stated that Defendants' review of the requested G-suite documents was continuing, and

that they hoped to supplement with those materials shortly. *Id.* That supplemental production has never occurred.

Finally at the end of their reasonable patience in this matter, Red Wolf demanded a meet and confer to seek resolution of this continuing, unreasonable, production delay. During the parties' meet and confer discussion on February 25, 2020, counsel for the Bia Defendants admitted that they had been relying on Bia's "in-house" IT expert to collect and produce the requested documents. This is especially troubling given that person is presumed to be an interested party in this matter, if not an individually-named defendant. Further, Jylkka's attorneys have stated that they relied on Jylkka to collect his own emails and documents and transmit them to counsel for review and production. Given that collection has been performed by the parties themselves, counsel for Defendants stated that it would likely be difficult to obtain and produce the linked documents as they existed on that date. However, the Bia Defendants agreed to obtain and produce the documents nearest in time to the linked communication and to inquire of the Bia Defendants as to the collection process of their individual Gmail accounts by March 6, 2020. *See* Exhibit A. As of this date, no such documents or information have been received. These documents are especially relevant to this matter. As previously disclosed to the Court in its Motion for Scheduling Order (ECF #42), Red Wolf found one such document online that clearly calls the veracity of certain statements in Defendants' Declarations into serious question, before Defendants removed it from public view. A copy of that document, a job posting that has since been made "private," is re-attached as Exhibit K. Further, correspondence between the Defendants demonstrate Defendants' plan to mislead Red Wolf as to the nature of Bia's intended business and Jylkka's involvement, thereby making production of these Google Suite-linked documents as they existed at the time of the utmost importance. *See* Exhibit L.

C.     **Production of Improperly Designated Documents**

Despite numerous discussions, Defendants continue to abuse the Attorney's Eyes Only ("AEO") designation of their produced documents. Pursuant to the parties' Confidentiality Order, documents designated AEO may not be disclosed to the parties in the Action. *See* Confidentiality Order, Exhibit I, at p. 2-3. Further, where a party challenges the designation by a producing party, it becomes the burden of the producing party "to demonstrate under applicable legal standards that the information in question is sufficiently sensitive to warrant confidential treatment." *Id.* at p. 5.

In the previously referenced December 16, 2019 email to Defendants, counsel for Red Wolf addressed Defendant's inexplicable overuse of the Attorneys' Eyes Only ("AEO") designation. *See* Exhibit E. Over the next few weeks, the parties conferred repeatedly with respect to the Scheduling Order in this matter; this Court has since allowed the resulting Joint Motion to Extend. During these discussions in an email dated January 14, 2019, counsel for Red Wolf again raised its request for re-designation of the AEO designation, as there had been no response from any of the Defendants on this issue. *See* Exhibit J. In short, Red Wolf challenged all AEO designations by the Defendants, as the only reason for its use appeared to be preference that certain information not be disclosed to the Red Wolf plaintiffs. *See e.g.*, Exhibit D. During this time, counsel for Red Wolf was unable to share over 4,000 *documents (not just pages)* with its client, which is particularly critical in a case like this with a highly technical subject matter such as energy trading. *See Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan*, No. 11–10561, 2012 WL 1936415, at *1 (E.D.Mich. May 29, 2012) (noting that an AEO designation limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions).

In response, counsel for Defendants again asked counsel for Red Wolf to do their work of identifying the documents or categories of documents had been improperly designated. Counsel for Red Wolf identified more than 4,000 documents labeled AEO by the Bia Defendants and more than 500 pages of documents labeled AEO by Jylkka. *See* Exhibit J. Counsel for Defendants replied on January 17, 2019 and confirmed that they would review the AEO designations and categorical approaches to see what could be re-designated. *Id.* On January 31, 2020, counsel for the Bia Defendants confirmed that her office was reviewing the AEO designations and hoped to supply Red Wolf with an update the following week. *See* Exhibit M. On February 13, 2019, counsel for the Bia Defendants sent Red Wolf a list of Bates ranges to be re-designated from AEO to Confidential, noting that there was still a batch to review and that their goal is to provide replacement production files with the new designations. *Id.*

Following the parties' meet and confer discussion on February 25, 2020, counsel for the Bia Defendants agreed to provide the full list of documents being re-designated and "clean" versions of the re-designated documents by March 6, 2020. *See* Exhibit A.  The parties further agreed that re-designation by Jylkka is dependent on the scope of re-designation by the Bia Defendants given the Defendants' joint defense agreement.

On March 6, 2020, the Bia Defendants produced a full list of documents being re-designated and "clean" versions of the individual pages being re-designated.  Given the technical difficulty of replacing individual pages of the documents, rather than the entire document itself, Red Wolf requested that the Bia Defendants re-produce the re-designated documents with their full ranges. The Bia Defendants agreed to look into this and continue to investigate additional issues uncovered by their vendor in response to Red Wolf's inquiry.  As such, Red Wolf has not yet been able to view the Bia Defendants' full production with these re-designations.

For purposes of this Motion, given the Defendants' conduct as to AEO in this case thus far, Red Wolf moves to compel the Bia Defendants and Jylkka to state the basis for their designation of each document that remains designated as AEO as they are required to do by law and pursuant to the parties' Confidentiality Order.  *See Ragland v. Blue Cross Blue Shield of N.D.*, No. 1:12–CV–080, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013) (holding that "any designation of material as "attorneys' eyes only" should be reserved for only those rare instances in which it is truly justified, i.e., when there is a real expectation and entitlement to confidentiality under the law that has been preserved and not waived and there is no other effective alternative.").  The need for these Defendants to satisfy this burden is particularly acute here, where the Confidentiality Order already limits use of "protected material"—which includes documents designated as "Confidential"—for the *sole purpose* of the litigation at hand, and for no other purpose without prior written approval by this Court or consent of the producing party. *See* Exhibit I, at p.4.  Further, Red Wolf requests that Defendants be compelled to produce "clean" version of the re-designated documents in their entirety, as requested of the Bia Defendants above. Finally, Red Wolf requests that Jylkka's production of the re-designated documents be pursuant to reasonably accepted ESI standards, including a load file and TIFF images, as discussed by the parties since his initial productions.  *See* fn.2, *supra*.

D. **Production of Documents by Michael Harradon**

Despite submitting a Declaration that attests to a large number of interactions, communications, and development work on Bia's behalf—to date, Defendant Michael Harradon ("Harradon") has produced a mere 44 *pages* of discovery. Red Wolf has inquired numerous times of counsel for Harradon as to the lack of production, particularly in light of the representations made in his 6-page Declaration. *See* Exhibit B.  *See Enargy Power (Shenzhen)*

*Co. v. Xiaolong Wang*, No. CIV.A. 13-11348-DJC, 2014 WL 4687542, at *4 (D. Mass. Sept. 17, 2014)("Plaintiffs are entitled to find out whether Defendant[s] have completed their searches, produced all responsive documents, or only produced some documents and withheld others.").

Following the parties' meet and confer discussion on February 25, 2020, counsel for Harradon agreed to inquire with their e-discovery vendor as to Harradon's lack of production, and any impact of producing only de-duplicated documents, and to inquire generally whether personal Gmail accounts were collected by a third-party or vendor, or by the individual defendants themselves, and to produce any additional documents or at least convey answers to these inquiries by March 6, 2020. As of March 6, 2020, no such documents were produced, and no answers to these inquiries were received.

The fact that Harradon claims to lack relevant documents here is belayed by his Declaration.  In it, he describes in detail the extensive work that he conducted on "Bia's" behalf (in his Declaration, Harradon called the then-unnamed venture "Bia" for simplicity).  *See* Exhibit B, at ¶ 6.  Yet, he has produced only scant documents to support his claims.  Further, Harradon himself claims to have communicated with "Greg and others" and Jylkka through electronic communications. *Id.*, at ¶¶17, 20.  To the extent that Harradon's lack of production is the result of counsel for the Bia Defendants not producing duplicate documents—i.e. not producing a document on behalf of Harradon if a duplicate versions is being produced on behalf of Moeller—counsel for the Bia Defendants should identify such documents, if not reproduce on behalf of each applicable defendant, so that Red Wolf may properly understand and evaluate the documents produced by and applicable to *each* of the Bia Defendants.

### E.  Attorney's Fees and Costs

To prevent further and undue delay of documents—which were first sought over five months ago—Red Wolf requests that it be awarded attorney's fees and costs incurred in preparing, serving, and arguing this motion as specifically contemplated by Fed. R. Civ. P. 37(a)(5)(A) (stating that when the motion is granted, "the court must require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"). This request is reasonable given the enormous time, expense, and good-faith effort that Red Wolf has expended in pursuing what is straightforward and reasonable discovery.  Indeed, much of what Red Wolf seeks to compel here are documents that Defendants' agreed to produce—but simply have not done so.

## CONCLUSION

WHEREFORE, and for the foregoing reasons, Plaintiff Red Wolf requests that this Court compel (1) Jylkka and the Bia Defendants to produce responsive, non-privileged documents to all  requests through January 31, 2019; (2) the Bia Defendants to produce Google Suite documents linked to in Defendants' production; (3) all Defendants to produce documents previously designated as Attorney's Eyes Only ("AEO") in re-designated form and state the basis for the remaining AEO designations; (4) Harradon to produce all documents supporting the statements made in his Declaration; (5) fees and costs related to this Motion; and (6) for such other relief as this Court finds just and proper.

Dated:  March 11, 2020                     RED WOLF ENERGY TRADING LLC

                                           By its attorney,

                                           */s/ John A. Sten*
                                           John A. Sten (BBO #629577)
                                           Pierce Atwood LLP
                                           100 Summer Street
                                           Boston, MA  02110
                                           Telephone: (617) 488-8155
                                           Email: jsten@pierceatwood.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2020, the foregoing Motion to Compel was filed through the ECF system such that registered participants as identified on the Notice of Electronic Filing (NEF) have received service pursuant to Local Rule 5.4(c).

                                           */s/ John A. Sten*
                                           John A. Sten