UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RED WOLF ENERGY TRADING, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-10119-MLW |
| BIA CAPITAL MANAGEMENT, LLC, GREGORY V. MOELLER, GROWTHWORKS, LLC, MICHAEL HARRADON, and JON MOELLER | ) ) ) ) ) ) | **LEAVE TO FILE GRANTED 6/8/22** |
| Defendants. | ) ) ) | |

### PLAINTIFF'S MEMORANDUM
### IN SUPPORT OF SECOND MOTION FOR SANCTIONS

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiff, Red Wolf Energy Trading, LLC ("Plaintiff" and/or "Red Wolf"), by and through its undersigned counsel, respectfully submits this memorandum in support of its Second Motion for Sanctions against Defendants Bia Capital Management, LLC ("Bia") and Gregory V. Moeller (together, "Defendants"):

### SUMMARY

As this Court is well aware, Plaintiff has sought the production of "missing" Slack communications from Bia since 2019.[1] Initially, Bia denied that any Slack was missing from its initial or supplemental productions, but eventually admitted that it had only produced Slack

---

[1] *See e.g., Hearing Transcript for March 31, 2021* ("March 2021 Tr.") at 47:17-22; *Transcript of Conference held on August 26, 2021* ("August 2021 Tr.") at 7-10; *Hearing Transcript for March 22, 2022* ("March 2022 Tr.") and ECF Nos. 112, 113, 135, 140, 141, 150, 151, & 168.

communications that hit upon certain search terms, and Bia had not produced all Slack communications between Jylkka and the Bia Defendants.[2]

In response to that revelation, Red Wolf moved to compel all Slack communications between Jylkka and the Bia Defendants. In opposition, Bia claimed that it was obligated to produce only the Slack messages that "hit" on search terms (c)-(m)—which included "RW" and "Red Wolf"—and represented that all documents responsive to those parameters were produced. *See* August 2021 Tr. at 10:1-6; *see also* ECF No. 157 at 6. The Court granted Plaintiff's Motion to Compel on March 23, 2022. ECF No. 182.

Thereafter, on April 6, 2022, Plaintiff obtained a complete extraction of archived communications from Bia's Slack account for the relevant time period and gave it to its outside vendor to process. This "new" Slack production was magnitudes larger than Bia's original production, 2,428 pages of Slack communications. By comparison, less than 200 pages of Slack communications appear to have been produced originally.[3]

Red Wolf's counsel then began reviewing the material and immediately noticed that there appeared to be a significant amount (numbering in the hundreds) of "new" Slack messages that contained the search terms initially applied by Defendants. Counsel for Red Wolf immediately notified Bia's counsel of this issue, and asked them to confirm the same. They declined to do so and instead told Red Wolf's counsel that they would have to inquire about the issue with Moeller during his upcoming deposition. *See April 27, 2022 email* attached hereto as <u>Exhibit A</u>. In his

---

[2] The "Bia Defendants" are the original defendants in this matter: Bia Capital Management, LLC, Growthworks LLC, Greg Moeller, Jon Moeller, Michael Harradon, Chris Jylkka, Brian Voorheis, and Eric Brown.
[3] This number of pages is a best estimate only, as the "cut-and-paste" format as well as the multiple chopped up files of Bia's original Slack has made it extremely difficult to fully quantify and compare with Bia's newly produced Slack files.

deposition, Moeller confirmed that Bia's earlier Slack production was incomplete and blamed it on a 2019 programming error by one of Bia's Members. Further, Moeller admitted that the original 2019 Slack extract was produced to Bia in a computer programming language, JavaScript Object Notation ("JSON"), that has been in existence for "quite a long time." *Deposition Transcript of Greg Moeller from May 2022* ("G. Moeller Depo. Tr. 2022") at 189:1-11.[4] In fact, the April 2022 "new" Slack archive extract also was produced in JSON format—so it is clear that software language was not the cause of Bia's earlier production "problems" (as they appear to have claimed). Accordingly, at his May 2022 deposition, Moeller was forced to confess that the true reason Bia used its in-house computer programmer (who was paid in Bia stock) was not because suitable technology existed in 2019, but rather "to save money." It had nothing to do with any technological difficulties in 2019 concerning the extraction of Slack messages.

In sum, all of the earlier claims by Moeller and Bia about the technological difficulties of working with and producing Slack messages in 2019 are false. All of the claimed difficulties came from Bia's attempt to fashion a "do-it-yourself" remedy to translating and formatting files from a well-known and widely used open-source software language that has been around for 20 years.[5] Beyond the sheer volume of the documents that have been "newly" produced, the substance of the production is dispositive of this case—as it clearly shows a history of Jylkka, Moeller, and Harradon working closely together to develop an electricity trading platform utilizing Bia's

---

[4] All of the excerpts from the Deposition Transcript of Greg Moeller from May 2022 are attached hereto as <u>Exhibit B</u>.
[5] Moreover, as discussed herein, Moeller's new excuse of software programming error appears to be false. The omitted Slack's are not direct messages as he claims. Instead, it appears that certain Slack Channels were never searched or produced, or that the date ranges of Bia's original searches were deceptively limited by Bia. In sum, it appears that certain communications were intentionally omitted, and the claim of "software error" is now being used to cover up the intentionality of those omissions.

3

database and determine the appropriate data inputs to "train" the various iterations of Bia's AI trading algorithm between 2017 and 2019.

The newly-produced Slack communications further show that Defendants' 2019 affidavits are materially untrue. There was no plan to approach Jylkka as a potential customer as Defendants have claimed in their worn statements to the Court. From the start, Jylkka and Moeller worked to create an electricity trading business to compete in the marketplace against Red Wolf. Additionally, Harradon's January 29, 2019 affidavit stated that:

> "At the time I met Chris, the algorithm was already on the cusp of profitability, although there was great inconsistency which I was trying to eliminate. While I continued to refine the algorithm's source code, the change to the algorithm that had the most dramatic effect in performance was fixing the technical bugs in the program—a process that I completed over the course of approximately nine months in 2018. **Chris did not assist in this effort in any way, and in fact he provided no assistance to me in developing the algorithm.**"

ECF No. 19-5 ¶ 21 (emphasis added). Harradon also stated that he and Jylkka occasionally communicated electronically. *Id*. ¶ 20. These statements are clearly refuted by the newly produced Slack messages. *See e.g.*, BCMSUPP 013435-013453; BCMSUPP013460-013468; BCMSUPP013474-013482, which are attached hereto as Exhibit C. Additional examples include:

- On September 17, 2018 Harradon asked Jylkka whether he has "any techniques that work well for finding profitable DECs" as it was difficult for the algorithm to make money with DECs. BCMSUPP 013488.

- On September 19, 2018, Harradon thanks Jylkka for the analyses and states that he thinks they "can use the forecasting error insight in particular to improve these issues." BCMSUPP 013496.

- On September 26, 2018, Moeller asks Chris to "offer some answers to Michael [Harradon]'s questions." BCMSUPP013501.

- On September 29, 2018, Harradon again thanks Chris for the analysis. *See* BCMSUPP 013504.

- On December 3, 2018, Moeller stated: "I think we should continue to use Chris's constraints. Two reasons I can think of (1) it is likely way to mitigate risk and (2) if we

4

have the opportunity Chris can trade it on his platform for some real world testing." BCMSUPP 013542.

- On December 12, 2018, Moeller wrote to Jylkka, "[w]e had two really bad days in the current data set…Would you take a look at those days and see what was driving the pricing for that day? I am wondering if there is a feature we are missing that Michael [Harradon] could use." BCMSUPP 013547.

- On December 20, 2018, Jylkka wrote, in part, to Brian Voorheis: "In my opinion one of our biggest risks is not having the best tools when we go live. Although Greg does not think much of the RW UI it has been built on the collective experience of dozens of traders over 10 years." BCMSUPP 012024.

The newly-produced documents leave no doubt as to Defendants' liability in this matter. Had these documents been produced in December 2019—as they should have been—this matter would have progressed far differently, with additional discovery shaped by these documents and the near certainty that Red Wolf would have moved for summary judgment. Those events over the last two years (including all of expert discovery and deposition) cannot be quickly replicated, and moving for summary judgment now—with trial less than 90 days away—is not feasible. Accordingly, Red Wolf has been severely prejudiced in its prosecution of this case as a result of Bia's misconduct. It has incurred hundreds of thousands of dollars of litigation costs that could have been avoided had Bia produced documents as it was obligated to do in December 2019. This case has dragged on years more than necessary, all because of Bia's discovery games and misconduct. The harm done to Red Wolf is irreparable.

Accordingly, and for the reasons set forth below, this Court should grant Plaintiff's Second Motion for Sanctions and Order Moeller and Bia to: (1) pay Plaintiff's reasonable attorneys' fees associated with review of the thousands of pages of newly-produced Slack documents;[6] (2) pay

---

[6] Plaintiff notes that a portion of this review was duplicative as some Slack messages were part of the initial production. Additionally, Plaintiff expended time reviewing the initial and supplemental Slack communications to discern which messages had been produced previously and which had not.

5

Plaintiff's reasonable attorneys' fees and costs associated with preparing for and taking the renewed depositions of Greg Moeller and Michael Harradon and the deposition of Eric Brown; (3) pay for the costs associated with the review of Slack messages by Plaintiff's experts necessitated by the belatedly produced documents; (4) pay Plaintiff's reasonable attorneys' fees associated with bringing the Motion to Compel Slack (ECF No. 150); (5) pay Plaintiff's reasonable attorneys' fees in connection with this motion; (6) enter judgment in Red Wolf's favor on all counts and (7) Order any such other relief that this Court finds appropriate.

## BACKGROUND

Plaintiff propounded its First Request for Production of Documents to Defendant Bia Capital Management, LLC. (*See* ECF No. 150-1). Request No. 1 asked for:

> All communication sent or received between January 1, 2015 and the present between Christopher E. Jylkka ('Jylkka') and Gregory V. Moeller ('Moeller'), Michael Harradon ('Harradon'), Jon Moeller, Eric Brown, or Brian Voorheis.

Bia provided its response to Plaintiff's Request No. 1 on or about November 15, 2019, stating:

> *Bia objects to this Request on the grounds that it is ambiguous, overly broad and unduly burdensome. Bia further objects to this Request because it seeks documents that are not relevant to the claims and defenses in this matter, are not reasonably calculated to lead to the discovery of admissible evidence, and are not proportional to the needs of the case. Bia further objects to this Request to the extent it seeks documents protected by the joint defense privilege. Subject to and without waiving these objections, Bia responds as follows:*
>
> ***Bia will produce responsive, non-privileged documents sent or received between January 1, 2015 and January 8, 2019 between Jylkka, on the one hand, and any of Moeller, Harradon or the other three individuals, on the other hand, concerning Bia, Red Wolf, or Growth Works that are within its possession, custody and control****, subject to appropriate confidentiality under the parties' Revised Stipulated Confidentiality and Protective Order.*

*Id* (emphasis added).

6

Given Plaintiff's ongoing concern that Defendants did not produce all responsive, non-privileged documents to this request, Defendants were, on several occasions, specifically ordered by this Court to ensure compliance with Fed. R. Civ. P. 26(e). *See* ECF Nos. 112 & 140. In response, Moeller, by and through counsel, filed two affidavits with this Court, in April and September of 2021, asserting that Defendants had conducted good faith searches for responsive documents in compliance with Rule 26(e) and claimed that no further supplementation was required under the Rule. *See* ECF Nos. 113 & 141. Defendants' counsel made substantially similar representations to Plaintiff's counsel, as well as to this Court.[7]

### I. Plaintiff continued to request the production of all Slack communications by Defendants to no avail.

In August 2021, Red Wolf learned that Defendants applied search terms to the Slack communications. *See* August 2021 Tr. at 9:14-22. Prior to the August 2021 conference, Plaintiff had believed that all electronic communications between Jylkka and Bia covering the relevant topics were being produced. Following this conference, Plaintiff's counsel requested that all relevant Slack channel conversations called for by Red Wolf's document requests be produced. *See September 29, 2021 email* attached hereto as <u>Exhibit D</u>. In this email. Plaintiff's counsel stated:

> "At this time, Red Wolf is convinced that there are documents concerning this case that your clients provided to Todd & Weld, but have not been produced by you—**either because they were not picked up by the search terms that were applied, or for some other reason**…"

*Id.* (emphasis added). Defendants counsel responded within four minutes, stating "all the Slack we received was produced; my firm did not withhold any of it." *Id.*

However, on October 12, 2021, Defendants' counsel informed Plaintiff's counsel that she was aware of Slack messages between Jylkka and the other Defendants that had not been produced

---

[7] *See e.g.*, August 2021 Tr. at 7-10;  ECF No. 150-3; ECF 150-6; and ECF 157 at 2.

to Plaintiff. It was at this time that Defendants' counsel told Plaintiff's counsel that only snippets of the relevant Slack communications were produced, and that the full, intact, Slack channels that contained communications between Jylkka and the other Defendants had not been produced. Defendants refused Plaintiff's subsequent request to supplement the Slack production, stating: "Defendants will not agree produce the full slack you requested.  We have complied with your discovery requests, subject to our objections, and we have complied with the Court's April 2, 2021 Order and August 31, 2021 Order." *See October 14, 2021 email chain between counsel* attached hereto as Exhibit E.

Plaintiff filed a Motion to Compel the complete response to Red Wolf's Document Request Number 1, including all Slack communications on November 1, 2021. *See* ECF No. 150. As part of the opposition, Moeller filed a declaration with the Court, outlining the process of production of the Slack messages and stating:

> "Once Bia had access to our Slack history outside of the platform, we used the search terms supplied by the Plaintiff in their document requests, which I understand to be (c) through (m) from their Request Number 2, to search for Slack messages across our data. **This search went through direct message threads and channels.** We did not limit the search to threads or channels with Mr. Jylkka only, because we were also required to produce all communications on the same topics in response to Request Number 2."

ECF No. 157-3 ¶ 9 (emphasis added). Moeller further declared, "every message identified as a result of this search, including those with search term hits and the context messages, was produced. None were withheld." ECF No. 157-3 ¶ 13.  Further, Bia's counsel wrote in its Opposition to Motion to Compel:  "For Slack, however, all messages with a search term were produced." ECF No. 157, p. 6.

On November 29, 2021, as this Court is aware, Defendants produced an additional 47 documents that had not been previously produced by Defendants. As a result, Plaintiff filed a

8

Motion for Sanctions. *See* ECF No. 168. The Court held a hearing for both the Motion to Compel and Motion for Sanctions on March 22, 2022. During this hearing, the Parties and the Court spent a considerable amount of time discussing Defendants' production of responsive documents, including the production of Slack communications, Moeller and counsel's search of Slack messages, the application of search terms (c)-(m) to the Slack messages, and Defendants' copying-and-pasting of messages that had a search term hit. Defendants stated that in order to produce the Slack messages, they "ran a search and when there was a message that hit on a term, that was the communication, and [they] produced it with context." March 2022 Tr. at 24:12-14.

    **II.**    **Plaintiff discovers that Defendants failed to produce Slack messages central to the issues in this matter upon receipt of the Court-ordered production of all Slack <u>communications</u>.**

On or about March 23, 2022, this Court granted Plaintiff's Motion to Compel and Ordered that Defendants produce all communications. *See* ECF 182 ¶ 1. Upon even a cursory review of the Slack communications produced in April 2022, it was clear that, until this point, Defendants had failed to produce all responsive Slack messages. Despite Defendants' repeated assertions regarding the application of search terms (c)-(m) to the Slack communications, Defendants did not produce all messages that hit on the search terms. *See* March 2022 Tr. at 23:2-21 & 35:10-14; *see also* ECF No. 157 at 7. Defendants' April 2022 supplemental production of Slack messages (a total of 2,428 pages) included search terms such as "RW" and "Red Wolf" in a significant number of messages between Jylkka and the Bia Defendants. Many of those highly relevant messages were being produced for the first time in this litigation.

Notably, it was Plaintiff's counsel that informed Defendants' counsel that certain messages containing "RW" and "Red Wolf"—search term (c)—among other messages, had not been previously produced by Defendants. *See* <u>Exhibit F</u> - April 9, 2022 email.  In that email, Plaintiff's

9

counsel asked for Todd & Weld's assistance with determining the extent of the new-found omissions. They responded that Red Wolf's counsel would need to seek its answers straight from Moeller during his contemplated deposition. *See April 27, 2022 email chain between counsel* attached hereto as Exhibit A.

During the renewed deposition of Moeller, Plaintiff heard Moeller's "new" explanation as to how the Slack communications were allegedly produced in December 2019 and January 2020, which led to the omission of all direct messages. G. Moeller Depo. Tr. 2022 at 37:18-24 & 48:2-21. His explanation is not credible. First, by showing that Bia was engaged in litigation, Slack readily provided Bia with the data containing all of Bia's Slack communications in JSON format—a well-known and often used file format. *See* ECF No. 157-3 ¶¶ 7-8. Rather than using a litigation data vendor or ESI vendor to search and produce the Slack communications in a readable format, Moeller relied on Minas Abramyan—a member/owner of Bia who is based in Kazakhstan—to write a program for the data obtained from Slack in JSON format. G. Moeller Depo. Tr. 2022 at 21:15-22:13 & 189:17-190:7.

As to why the "mistake" happened, Moeller offered the following explanation:

> "[Minas] searched all the search terms in all the files and packaged those files in a raw format and that was a SIP file and that file was produced or I shared it with Counsel. After looking through what was contained and seeing empty folders and thinking how you would have to search it it was clear that that wasn't going to be useful and – yeah, so, it wasn't going to be useful. So, we – what I asked Minas to do was parse it so that we got the human-readable text in a format that would be useful and stable, and quite frankly, more user-friendly for all of us so that we had the information. Unfortunately, what we didn't know because it was basically our first time dealing with this format, not dealing with JSON, but dealing with the format that is specific to Slack, we didn't know that those unique identifiers that a bunch of random and symbols mean Greg and other random numbers and symbols mean Chris, we didn't know that with the one-to-one messages. So, if I message Chris Jylkka only in a direct message, those ones didn't contain that unique identifier and, so, it was Minas' programming mistake related to that unique identifier that caused those communications to be excluded."

10

G. Moeller Depo. Tr. 2022 at 35:15-37:3. Moeller attributes the omission of all direct Slack messages to "Minas' programming mistake." *Id*. at 36:24-37:5.

Moeller's "new" explanations appear to be as false as his prior explanations—and clearly evidence his bad faith. For example, prior to his renewed deposition, Moeller asserted that in 2019, there was no ready mechanism to export the Slack messages for production in litigation. *See* ECF No. 157-3 ¶ 5. But Moeller refined his explanation at deposition and admitted that he only conducted a few internet searches on the topic: "[Bia] conducted a number of Internet searches for the tools on the Slack site looking for third-party vendors through Google" and he spoke with former Bia Member Eric Brown.[8] G. Moeller Depo Tr. 2022 at 9:14-10:5

Further, Red Wolf recently inquired of its vendor and was informed that the "new" Slack archive production was in the same software format as the 2019 production—both were in JSON format. *See May 18, 2022 email from document vendor* attached hereto as <u>Exhibit G</u>. Upon that revelation, it became clear from Moeller's November 2021 Affidavit that once he notified Slack of Bia's document subpoena in this matter (in 2019), Slack readily exported Bia's Slack file archive, and provided it to Bia in an easily usable, well-known software format, i.e., JSON. ECF No. 157-3 ¶¶ 7-8. Red Wolf requested that original 2019 Slack archive file from Bia's counsel. *See* Ex. F. That archive has yet to be produced by Defendants or their counsel.

---

[8] Moller identified Eric Brown as a consultant of Bia; however Brown testified that he would say he was more of a volunteer as opposed to a consultant and was involved with Bia only for a couple of weeks in the fall of 2017 prior to the filing of this lawsuit. *See Deposition Transcript of Eric Brown* at 7:17-10:1 (all excerpts from the Deposition Transcript of Eric Brown are attached hereto as <u>Exhibit H</u>.) Brown testified that he did not advise Moeller that a programmer was needed to search Slack, and informed Moeller that he was not familiar with Slack to give him any guidance. *Id*. at 30:11-32:18. Around 2017 to 2018, Mr. Brown had equity in Bia, which makes him a Member. But he could not recall if he currently has equity in Bia. *Id*. at 51:19-52:21.

Moeller's claim that Minas made a mistake as to unique identifiers in his software program also appears to be inaccurate. G. Moeller Depo. Tr. 2022 at 35:15-37:3. Moeller's November 2021 Affidavit plainly states that "the sender of the message appeared as a unique ID number, but not by name." ECF No. 157-3 ¶ 8. Moreover, Moeller claims that only direct messages were excluded from the 2019 Slack production. G. Moeller Depo. Tr. 2022 at 35:15-37:3. There is no evidence of that in the hundreds of pages of "new" communications are direct messages. Further, given that Defendants claim to have used its search terms, and not Jylkka or the other Bia Defendants, to identified relevant documents, Moeller's explanation of "unique identifiers" makes no sense. The author is irrelevant in a "search term hit" production.

Finally, contrary to Defendants' representations, they never spoke with any tech vendor to determine whether they had software capabilities for importing JSON code and making it into a usable format. *Id*. at 13:2-25:8. But as Greg Moeller now acknowledges, JSON/JavaScript is a "well-known language" and "there are plenty of programmers who can deal with JavaScript" *Id*. at 29:2-20 & 29:21-30:10. An ESI vendor or programmer would have the ability to transform a JSON string at any time given that it is not a new technology. G. Moeller Depo Tr. 2022 at 189:12-17. Ultimately, Moeller noted, "[o]ne of the reasons [Bia] chose to go with [their] own Java programmer is because of a limited budget." *Id*. 64:6-8. He stated that Bia did not have the financial resources, and by using Minas and paying him in Bia ownership equity (zero cash outlay), Bia could continue to remain in business. *Id*. at 189:17-190:7.

Bia's discovery "oversights" are disingenuous and the product of bad faith. Bia was under clear instructions by this Court to ensure that all responsive materials had been produced.[9] But Moeller and his counsel <u>never</u> conducted a meaningful supplemental review. Instead, Moeller

---

[9] *See e.g.,* ECF Nos. 112 & 140, March 2021 Tr. at 47:17-22 and August 2021 Tr. at 10:10-15.

admitted that he "had done some spot checking" at the time of writing the April 14, 2021 and August 31, 2021 Affidavits (ECF Nos. 113 & 141). *Id* at 43:11-15. Specifically, he "searched for a few different relevant pieces, checked that what [he] saw matched what was there and *that was the end of it." Id*. at 44:2-9 (emphasis added).

As this Court noted during its last hearing, it gave Bia the "benefit of the doubt" and found that there was "a failure of the meeting of the minds" with regard to the application of search terms as to the initial Slack productions. *See* August Tr. at 38:24-25 and 56:2-10; *see also* March 2022 Tr. at 41:21-8. Recent events reveal fully that, as Red Wolf has been claiming since the start of this matter, Defendants have been playing a shell game to hinder discovery and hide documents that damage Defendants' case (and which reveal their January 2019 affidavits to be false) from the beginning. It is time Moeller and Bia are held fully accountable for their bad faith and deceit.

## ARGUMENT

**I.  RED WOLF IS ENTITLED TO SANCTIONS AS A RESULT OF DEFENDANTS' BLATANT DISREGARD OF THE DISCOVERY PROCESS AND FAILURE TO ABIDE BY THIS COURT'S DISCOVERY ORDERS.**

### a. Defendants' Failure to Disclose the Method of Searching and Producing Slack Communications.

Rule 26(f) of the Federal Rules of Civil Procedure requires parties to meet and confer to discuss important e-discovery issues, including "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." *See* Fed.R.Civ.P. 26(f).

Rule 37(b)(2) states that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed.R.Civ.P. 37(b)(2). The First Circuit has identified a "non-

13

exhaustive list of factors" for Courts to consider when imposing sanctions, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015). Other considerations include "notice of the possibility of sanctions and the opportunity to explain its conduct and argue against the imposition of such a penalty." *Id*. Federal Rule of Civil Procedure 37(b) provides a "veritable arsenal of sanctions" in the context of discovery, including the imposition of "default judgment against [a] disobedient party" for failure to obey a Court Order. *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 84 (1st Cir. 2012) (internal citations omitted). While default judgment is considered a "drastic sanction," its entry "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." *Id*.

On July 1, 2019, this Court filed a Notice of Scheduling Conference which obligated the parties to consider the topics contemplated by Fed.R.Civ.P 16(b) and 26(f), and prepare a plan for discovery, among other things. *See* ECF No. 48. At no point during the initial production of Slack communications did Defendants or Defendants' counsel inform Plaintiff that they were relying on a Bia Member, Minas Abramyan, to write a program for the data obtained from Slack in JSON format. G. Moeller Depo. Tr. 2022 at 21:15-22:13 & 189:17-190:7.  From the testimony of Moeller—and the prior statements of Moeller and his counsel on these various issues—it appears that all of their activities were part of an intentional effort to hide many of the most damning communications in this action behind a wall of confusion and "ineptness."  Defendants' bad faith actions require punitive remediation.

14

Defendants have repeatedly failed to comply with this Court's April 1st and August 29th Court Orders. For over two years, Plaintiff has consistently and repeatedly stated that Defendants were not producing relevant documents that were called for by both the Federal Rules pertaining to discovery and pursuant to this Court's numerous Orders on the subject. The veracity of Plaintiff's complaints, and the defiance of this Court by Defendants is now plain to see. Accordingly, an entry of default judgment is the appropriate remediation.

### b. Defendants' Failure to Comply with the Court's April 1st and August 29th Orders.

It is well-settled that courts may impose sanctions under Rule 37 of the Federal Rules of Civil Procedure (Failure to Make Disclosures or to Cooperate in Discovery; Sanctions) where a party has violated Rule 26(e) or failed to comply with a court order. *See* Fed.R.Civ.P. 37. Rule 37 sets forth the Court's procedures for enforcing discovery and sanctioning misconduct. *See Techky v. City of New York*, 2000 WL 48862, at *2 (S.D.N.Y. Jan. 20, 2000) (noting that if a party fails to comply with a discovery order or fails to disclose information, the Court may impose any sanction "as are just" and authorized under Rule 37(b) and (c)).

Rule 37(b)(2) authorizes a court to impose sanctions for violation of a discovery order. *See e.g. U.S. v. Toth*, No. 2018 WL 4963172, at *3 (D. Mass. Oct. 15, 2018) (noting that Rule 37(b)(2)(A) sets forth the sanctions that a court may impose for a party's failure to obey a discovery order and further stating that Rule 37 requires a court to order the disobedient party or its attorney to pay the reasonable expenses, including attorney's fees, caused by the failure to comply, unless the failure was substantially justified or such an award would be unjust). Here, monetary sanctions are required because they are not unjust and the failure to comply with this Court's orders (ECF Nos. 112 & 140) is not substantially justified.

After years of Plaintiff pressing the issue of missing Slacks, Bia cannot in good faith say that Defendants complied with their obligations under Rule 26(e) or that a failure to discover the missing Slacks was substantially justified. Plaintiff finds it doubtful that Bia was unaware that the Slack communications as initially produced were incomplete. Even assuming Bia's ignorance is truthful (which it is not), Bia should have discovered that its responses were incomplete and that they were not in fact in compliance with Rule 26(e). It took Plaintiff's counsel only a matter of hours (if that) to determine that there were documents produced in the April 2022 supplemental Slack production that had never been produced before. Moeller's "spot-checking" is not consistent with the obligations under Rule 26(e) and Bia's conduct in response to the Court's orders was not undertaken in good faith. Had Defendants reviewed even a portion of the Slack archive (which Moeller and his counsel contend they are still in possession of), they would have discovered that there was an error with the initial Slack production. Notably, many of the documents that were not included in the additional Slack production are central to the issues in this case, and are easily identifiable and refer specifically to Red Wolf or the "RW" system.

Moeller claimed that "[s]ince filing these [affidavits] we have discovered that there was an oversight, very unfortunate oversight, and we have done our best to produce the things that were unintentionally excluded."[10] G. Moeller Depo Tr. 2022 at 42:7-13. Defendants' "best" efforts have fallen remarkably short. In fact, it has been Plaintiff who has had to ensure that the documents overlooked and excluded by Defendants were produced. Plaintiff had to raise the issue of missing Slack with the Court at least three times, was forced to file a Motion to Compel (ECF

---

[10] Plaintiff notes that Moeller continues to disclaim any responsibility for the documents which were excluded (Google Suite documents and Slack communications) instead blaming Bia Members Minas Abramyan and Eric Brown. *See* G. Moeller Depo Tr. 2022 at 35:15-37:5 and ECF No. 161 ¶ 5.

16

No. 150) and then, upon Court Order (ECF No. 182), hire (at its own expense) a vendor to obtain the Slack messages, and search through all messages from the relevant time period to identify relevant messages, including those messages that contained search terms (c)-(m) that had never been produced despite representations to the contrary. As the Court itself has stated: "I've spent more time on discovery disputes in this case than I may have certainly in any case in my 37-year career. March 2022 Tr. at 42:24-43:1.

Defendants' actions in this case warrant the imposition of the most severe sanctions. A District Court has wide discretion in choosing sanctions for discovery violations." *Toth*, 2018 WL 4963172, at *3 quoting *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 36 (1st Cir. 2012); *see also AngioDynamics,* 780 F.3d at 435 (District Courts may impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics); *Torres-Vargas v. Pereira*, 431 F.3d 389, 392 (1st Cir. 2005) ("[A] federal district court's venerable power to sanction a party who repeatedly fails to comply with court-imposed deadlines cannot be doubted.") (citations omitted). "In determining the appropriate sanction, if any, a court should 'consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation.'" *United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 136–37 (D. Mass. 2016).

Here, Defendants' repeated discovery violations and failure to comply with the Court's Orders have been deliberate, severe, and extremely prejudicial. Defendants have no plausible mitigating excuse for engaging in such bad faith behavior. Over the course of two years of discovery, there have been at least three major efforts by the Defendants to obstruct discovery: (1) the spoilation of evidence contained on Jylkka's cell phone; (2) the failure to produce all Google Suite documents; and (3) the variety of tactics employed by Defendants in an effort to

17

conceal "smoking gun" messages on the Bia Slack platform. The Court itself has noted the extraordinary time spent on discovery in this matter. *See* March 2022 Tr. at 42:24-43:1.

The waste of time, money and effort all results from Defendants' bad faith behavior during the discovery process. Even now, there remain unanswered questions as to the completeness and veracity of Defendants' discovery in this case. Moeller's explanation as to why the latest "mistake" occurred does not appear to be true—and in fact is contradicted by his and his counsel's prior statements to counsel and this Court. As this case has progressed dishonest tactics have become known to Plaintiff and the Court, the Court has provided ample warning to Defendants. Defendants' actions have severely and unduly prejudiced Plaintiff. In light of the above, this court should issue a directed verdict and find in favor of the Plaintiff on all counts.

## **CONCLUSION**

Bia has gone about "fulfilling" their obligations under the Federal Rules of Civil Procedure and the Orders by this Court in bad faith. These reckless and intentional "errors" of Bia have caused Plaintiff a substantial amount of time and money, and has unduly prolonged this lawsuit.

WHEREFORE, Plaintiff respectfully requests that this Court allow this Motion for Sanctions and enter an Order:

1) Requiring Defendants to pay Plaintiff's reasonable attorneys' fees associated with review of the belatedly produced Slack documents;

2) Pay Plaintiff's reasonable attorneys' fees and costs associated with preparing for and taking the renewed depositions of Greg Moeller and Michael Harradon and the deposition of Eric Brown;

3) Requiring Defendants to pay for the costs associated with the review of Slack messages by Plaintiff's experts necessitated by the belatedly produced documents;

4) Requiring Defendants to pay Plaintiff's reasonable attorneys' fees associated with bringing the Motion to Compel Slack (ECF No. 150);

5) Requiring Defendants to pay Plaintiff's reasonable attorneys' fees associated with bringing this Motion;

6) Entry of Judgment in Plaintiff's favor on all counts; and

7) Awarding any other relief that the Court deems appropriate.

DATED: June 8, 2022

RED WOLF ENERGY TRADING LLC
By its attorney,

*/s/ John A. Sten*
John A. Sten (BBO #629577)
Armstrong Teasdale LLP
800 Boylston Street, 30th Floor
Boston, MA 02110
Telephone: (617) 824-5128
jsten@atllp.com

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 8, 2022.

*/s/ John A. Sten*
John A. Sten

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)

I hereby certify pursuant to Local Rule 7.1(a)(2) that the parties conferred via telephone on June 7, 2022 and have attempted in good faith to resolve or narrow the issue presented above.

*/s/ John A. Sten*
John A. Sten